August A. Stavros *et al.,* Plaintiffs-Appellees, *v.* Zev Karkomi *et al.,* Defendants-Appellants.

(No. 56691;

First District (4th Division)—July 25, 1973.

*Rehearing denied September 11, 1973.*

Arnold I. Kramer, of Chicago, for appellants.

Calvin Sawyier, of Chicago, for appellees.

356

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The plaintiffs filed a complaint on December 7, 1970, against the defendants for injunctive and other relief arising from a real estate contract. Briefly the complaint charged that plaintiffs, August A. Stavros, James Stavros and Naurice M. Nesset, were the owners of the entire beneficial interest in certain land trusts, located mostly in Cook County and partially in Lake County, of which plaintiff, Wheeling Bank & Trust Co. is trustee. The complaint alleged that plaintiffs entered into an amended real estate contract for the purchase of the real estate with defendant, Zev Karkomi on October 8, 1969. Plaintiffs averred that they had fully performed all the conditions under the contract, but that defendant Karkomi had failed to make timely payments. Notice of forfeiture had been served on Karkomi pursuant to the terms of the amended contract. Since a deed to a parcel had already been placed in escrow, the Chicago Title & Trust Company was also made a defendant.

Plaintiffs prayed that (1) an injunction issue against the Title Company to prevent it from delivering to Karkomi or any other person a deed to the property held in escrow and to prevent the Company from transferring or returning to Karkomi any of the items deposited with it, and (2) an injunction issue to order Karkomi to execute a quit claim deed reconveying certain property to plaintiffs and to pay $100,000 as recompense to plaintiffs for said contract having been declared null and void by reason of defendant's material breach of the contract. To this complaint Karkomi filed a motion to strike on January 18, 1971.

Thereafter on April 14, 1971, the parties entered into a written stipulation which recited that the matter be settled in accordance with an agreed draft order to be submitted to the court for entry pursuant to the stipulation and approval of all parties. The stipulation further recited that the settlement would be null and void unless the court signed and entered the draft order exactly as in the form attached with only those changes made in ink on its face and initialled as approved by all parties. All of the parties signed the stipulation and presented it to the court for its approval on May 14, 1971.

An order was entered by Judge Nathan M. Cohen on May 14, 1971, which recited that "this matter having come on upon stipulation of the parties hereto; and the Court having considered said Stipulation and the file herein, and being duly advised in the premises," the court found and concluded that it had jurisdiction of the parties and of the subject matter, which was an amended contract executed by them on October 8, 1969, a copy of which was attached to the complaint. The order re-

cited further that "in order to settle the issue of whether strict forfeiture should be enforced against defendant-purchaser, the parties have arrived at an agreement" and "the Court finds the said settlement terms are just, fair, reasonable and equitable and should be approved and embodied in a decree of this Court."

It was ordered and decreed that the defendant make certain payments and do certain other acts, and the dates for defendant to make principal payments were extended. Provisions were made in the event defendant purchaser was in default and the court reserved jurisdiction "only for the purpose of carrying out the provisions of this final Order." Below the signature of the judge there appears the following notation:

"Dated: May 14, 1971

The contents and form of this Order are agreed to and approved by the parties hereto and through their respective counsel."

Below this were the signatures of the respective attorneys.

On June 8, 1971, plaintiffs served notice that they would present to the court on June 14, a motion for the entry of a rule to show cause why defendant Karkomi should not be held in contempt of court for failure to comply with the decree entered on May 14, 1971, and for forfeiture of defendant's interest in and to the real estate involved.

On June 14, Karkomi moved for a continuance until June 30, but he was ordered to file his answer to the rule to show cause by June 19 and the hearing on said motion for a rule to show cause was set for June 21. On the latter date Karkomi asked leave to file a petition to vacate the consent decree of May 14. We note that the petition to vacate the May 14 decree, which by its terms was a final decree, was filed more than 30 days after the entry thereof. It could be considered as having been brought under Section 72 although no request was made in this regard. Attached to the petition to vacate was an affidavit of Ben J. Rosenthal, defendant's attorney, requesting a continuance to "a date subsequent to July 5", for a hearing on the motion for a rule to show cause. The Court, however, set the hearing on the rule to show cause for June 30 and Karkomi was ordered to be present at that time. The trial court also set June 30 as the date for a hearing on the entry of an appearance by attorney Arnold I. Kramer as co-counsel for Karkomi.

On June 30, counsel for plaintiffs informed the court that Karkomi had not complied with the consent decree and was merely trying to delay any hearing on the matter. Mr. Kramer presented a letter from Dr. Sheldon H. Steiner, setting forth that Karkomi's attorney, Ben Rosenthal, was in the hospital for heart surgery. When the judge inquired of Karkomi whether Kramer was representing him, Karkomi replied that he authorized Kramer to appear only for the purpose of obtaining a

continuance until Rosenthal recovered, but not to appear as his attorney. The court then instructed plaintiffs' counsel to prepare a decree reciting that Karkomi was to execute documents in accordance with the decree within five days and upon failure to do so the Sheriff of Cook County would be directed to execute the documents in his stead.

Thereupon Kramer informed the court that Rosenthal had requested that he prepare a petition for a change of venue. Kramer presented the petition, which alleged that the trial judge was prejudiced against him and that this prejudice had first come to his attention on June 29, 1971, whereupon the court denied the change of venue. The judge indicated that he was going to set a date for a hearing on the rule to show cause because Karkomi had defied without just cause, as far as he knew, the orders entered by him, and he asked Kramer to suggest a date when he or Rosenthal would be ready to show why Karkomi should not be held in contempt of court. When Kramer asked what disposition the court had made of the petition to vacate the order of May 14, the judge replied that it was denied, and commented, "you have nothing before me today, I have refused to grant a continuance. If you are ready to proceed on that [petition to vacate], you may proceed. I can't grant a further continuance in the light of all of the machinations that appear to have been engaged in in this case." The court then set a hearing for July 8, 1971, on all pending matters.

The hearing scheduled for July 8 was continued to July 13 and then to July 20. On that date the trial court entered an order finding no merit to defendant's allegations in support of his petition to vacate the May 14 order. The court ordered that defendant comply with certain provisions of the May 14 order and made provisions for defendant's default under the terms of the decree. The petition to vacate the May 14 order was denied. In a separate order on the same date, the court set a hearing for August 5, 1971.

On August 5, 1971, the trial court entered an order finding that it had never issued a written denial of defendant's petition for a change of venue, and ordered that defendant's petition for a change of venue be denied *nunc pro tunc* as of July 20, 1971. The court called the petition "an obvious maneuver, one which the court deplores, to thwart the effect of the decree." The court set an additional hearing for August 11, 1971.

On August 11, the trial court reviewed the proceedings at length with regard to the petition for a change of venue, and stated that the true purpose of the petition was

"* * * to borrow more time for Mr. Karkomi, who had already

consented to an order, had agreed to abide by its terms, and instead of coming before this Court and seeking some honorable relief and pursuing the allegations set forth in the petition seeking more time to answer the petition for rule to show cause, attempted to evade the issue by this bad faith and dishonest petition."

The court then found the defendant in contempt of court and set August 18 for a hearing on the matters remaining unresolved. The court also vacated the portion of its July 20 order denying defendant's petition to vacate the May 14 decree and stated that defendant would be permitted to offer proof in support of his petition to vacate on August 18.

On August 18, the trial judge repeatedly stated to defense counsel that he was willing to hear any evidence counsel wished to offer in support of defense allegations that the consent decree was based upon misrepresentations or fraud and should be vacated, and asked defense counsel if he wished to proceed. Mr. Kramer did not present any evidence in support of the petition to vacate, and an order was entered denying the petition *nunc pro tunc* as of July 20, 1971.

On this appeal, the defendant solely contends that he filed a timely petition for a change of venue in proper form and that the trial court erroneously denied it. He also maintains that all subsequent orders of the court are therefore void.

Plaintiffs argue that the defendant filed the petition only for purposes of delay and that it was untimely filed after the entry of a final decree and after the trial court had considered other substantive matters in the case. Plaintiffs also contend that a change of venue petition does not lie in proceedings under section 72 of the Civil Practice Act.

As stated in *People v. Beamon*, 24 Ill.2d 562, 564, 182 N.E.2d 656, 658, "It has often been held that if a petition for change of venue on account of the prejudice of the judge is in compliance with the statute, [citing statute] the right of the defendant to a change of venue is absolute, both in criminal and civil cases. [Citing cases.] But it has also been held, both in criminal and in civil cases, that when it is apparent that the request is made only to delay or avoid a trial, its denial does not constitute error." (Citing cases.)

The record reveals that plaintiffs mailed a notice on June 8 that they would present their motion for a rule to show cause on June 14. On that date, they were met with a motion for an extension of time to answer the petition for a rule to show cause. The trial court denied this continuance, gave the defendant five days to answer, and set the hearing for June 21.

On June 21, defendant presented a petition to vacate the decree of May 14. The defendant combined his petition with a motion for a continuance to "a date subsequent to July 5" to answer the rule to show cause. The trial court denied this second request for a continuance and set a hearing on all matters for June 30, 1971. On that date, the defendant tried once again to obtain a continuance and authorized Mr. Kramer to appear solely for that purpose. This third request for a continuance was denied by the court, and counsel for plaintiffs was directed to prepare a decree ordering defendant to comply with certain requirements under the consent order. It was at this point that Mr. Kramer presented his petition for a change of venue.

■■ There is no dispute that the form of the petition for a change of venue complied with the statutory requirements. The trial court, however, found that the petition was filed for purposes of delay in order to avoid a hearing on the merits of the controversy. We think the record amply supports this conclusion. As stated in *Hoffman v. Hoffman,* 40 Ill. 2d 344, 348, 239 N.E.2d 792, 794, when it becomes apparent that a request for a change of venue is made only to delay or avoid trial, the denial of the petition for a change of venue does not constitute error.

Moreover, it seems to us that the petition was untimely filed. "It is well settled that a petition for change of venue comes too late when it is presented after the judge has ruled on a substantive issue in the cause." (*Swanson v. Randall,* 30 Ill.2d 194, 198, 195 N.E.2d 656, 659.) Once a party has determined the court's attitude on some portion of the merits of the case, the right to change of venue no longer exists. *Stahelin v. Board of Education,* 87 Ill.App.2d 28, 44, 230 N.E.2d 465, 473.

■■ In the instant case, the consent decree of May 14 clearly indicates on its face that before signing it, the trial court considered the stipulation and was advised in the premises. The order further recited that the court found the settlement terms to be just, fair and reasonable. The court specifically reserved jurisdiction for the purpose of enforcing the provisions of the decree. Moreover, on June 30, the trial judge instructed plaintiffs' counsel to prepare a decree to force defendant to comply with the May 14 order. On these facts, we think the petition for a change of venue was clearly untimely filed.

It seems to us that the trial judge throughout these proceedings displayed unusual patience with defendant. Considering the time and manner in which defendant presented the petition we cannot say that the court acted inappropriately in denying the petition. Since we have decided in favor of plaintiffs, we need not reach their additional argument that a change of venue does not lie in a section 72 proceeding. Nor do we reach defendant's argument that all subsequent proceedings were null

and void, since we have determined that it was not error to deny the petition for a change of venue.

The judgment of the Circuit Court is therefore affirmed.

Affirmed.

DIERINGER and JOHNSON, JJ., concur.